I'll announce our last case for argument today. 21-2757, Minnesota, Joseph Wobig et al. v. Safeco Insurance Company of Illinois. We'll hear from Mr. Gust. Thank you, Your Honor. May it please the court. My name is Robert Gust. I represent the plaintiffs Joseph and Carrie Wobig. This is a basic insurance dispute unlike the two previous cases involving larger federal issues. The issue in this case has to do, there's no dispute in this case that the other structure in this case is covered by insurance. There's also no dispute that the policy covers business property located anywhere on the premises, which includes by definition the other structure. The issue in this case is that Safeco takes a position that if business property is kept in the other structure, while the business property is covered up to $3,000, that voids the coverage for the other structure. Now, I only have really two fact issues that I want to cover. And the first is that this is the basic Safeco homeowner's policy for the state of Minnesota, probably actually for many other states, but I've only put in the addendum the key provisions. The entire policy is 70-some pages, and it is in the record at Documentary 45. And if you look at that, you can see there's even, when you get towards the back, it's called Minnesota Addendum. And so it suggests to me that the same policy is enforced in many states. And so the reason that's important is for two reasons. This is a basic homeowner's policy, and the other structure in this case happens to be a larger structure. But this is the same policy that somebody who grew up in my neighborhood with detached garages would have, and would cover their garage. The garage would be the other structure. And that's important because the conduct that's talked about as being business use in this case is really no different than what anybody in my neighborhood would have probably done in their own garage. And so that's the first thing, is while this is a bigger building, this wasn't a specialized policy. This was the typical Safeco policy. The second reason I bring that up is because this policy language, not only is it used throughout Safeco policies, it's pretty similar to language used in most policies in most states, as far as I can tell. And so this decision, or this case, while it's just between one insured and one insurer, actually is very impactful. I mean, there are all sorts of relationships that are potentially affected by this, and yet there are no cases that are remotely close to this in which the homeowners were denied coverage. So the second fact point that I want to emphasize is... Close on the facts, close on the law, coverage was denied. Are you familiar with the case? I'm afraid I'm not, Your Honor. Oh, okay. What's the full name of the case? Smith v. State Farm Fire and Casualty Company. But don't be concerned. You give us a 28-J too if you're ambushed. Go ahead. I think it wasn't a briefs, though. For sure. That's possible. It's possible that that was a liability case and not a property case. Well, this works better if you argue and I ask the questions. Well... Go ahead. That's what I'm thinking, Your Honor, because I certainly looked for every case that I could find that was a property case. In Minnesota, there were primarily liability cases that I could find, and even those liability cases were fairly clear that you don't look at anything that's isolated. You look at what the actual full use was. But Smith is a property loss claim. The barn collapsed, and they made a claim for the barn. And the barn was being rented. That's the case. If that jogs your memory at all, that's fine. If it doesn't, it just doesn't, and I don't mean to... Yeah, no, it does. And thank you. I appreciate that, Judge. So the Smith case, the barn was being rented. That is a business transaction, okay? So there was actual business transactions going on. There was something that happens between different parties, and money changes hands. And that was the use to which it was being put. The three cases that were cited by Safeco for the proposition in a business context, they all involve actual business transactions. One was somebody renting the barn. One was somebody with a tobacco business that was for profit, even though it was kind of a hobby business, but it was still for profit. And the other one was a neighbor who was conducting farming business in the property. And so even though that person wasn't being charged rent, the fact was it was a business transaction. In this case, the only thing that is claimed is the point I was about to get to, which is the second fact that I want to emphasize. From the very first moment that Joe Wobick spoke to Kathleen Zirke of Safeco, she asked him about whether or not, okay, where does your business keep its equipment? My business owns its own buildings, and this is all undisputed in the record. The business owns buildings. For the most part, its equipment is at job sites, and what's not at job sites is at other buildings. But she asked, well, and this is based just on her sort of notes, which are hearsay, but nonetheless, it's not inconsistent with the testimony that was ultimately developed. And what Mr. Wobick said was, I own a lot of tools, and occasionally, if necessary, I will take tools to a job site. But those are the only tools that are in the other structure. Now, Ms. Zirke's actual comment that she related to the underwriting department was Mr. Wobick said minimal equipment that he takes to job sites. In fact, the testimony actually showed, that sort of implies that every day he takes the equipment to job sites. The actual testimony was that, no, if we need some equipment at a job site and I have it, then we might take it. But that being said, Ms. Zirke communicated that to the underwriting department. The underwriting department is who sort of decided to enter into this contract. And the underwriting department says, that's not a problem. They said the insured would be told that the business property located on the premises is only covered up to $3,000. However, and as a result, he said that there was no problem with that. That's typical. And if you read the declarations page of the policy, it says other structure is covered. It says business property is covered up to $3,000 if it's located on the insured premises. Or it might be a homestead premise, whatever. And that is in turn defined to include the other structure. So the other structure, to the extent you have property located there, if in fact there was property located there, doesn't matter. That's what the underwriting department said. Now, I have one procedural issue and it's not even exactly a procedural issue, but I think it's appropriate to cover it as such. In the appellate brief, Safeco suggests, doesn't really argue, but suggests for the first time that the Wovigs should have purchased what's called the home business endorsement. Now, that's kind of a procedural argument because they never argued that below. But the truth is, I'm not sure they're even arguing it now because it's just in a footnote. But it's important to consider because there's been this implication by Safeco that they should have purchased the home business endorsement. And that's just not accurate and I had to put in my reply the testimony from the underwriting department that said no, in fact, the home business endorsement is not the work from home endorsement. It's the home business endorsement. Meaning people who actually are operating a business at their house as opposed to, you know, something that's incidental relating to the business that they already own, which is already completely insured. Counsel, your example. Judge Erickson, I think, was going to say something. I cut him off. You go ahead, Judge Ben. I'll try to be quick. Your position is kind of it's a matter of convenience. And everybody does it. I think that's what you've said so far. What Minnesota case uses the terms like matter of convenience? And everybody does it. I know some other states do. But does Minnesota? I don't think that my position is it's a matter of convenience. Are you sure? Are you sure it's not that? Because several other states buy that argument. Are you saying matter of convenience? That you keep the tools there. You keep the signs there. It was a matter of convenience and not a business necessity. I'm sorry. I thought that would be quick with you. But we can proceed. Well, I'm not aware of a case that talks about that as being a matter of convenience. You're correct that it is a matter of convenience. But it's also a matter of what difference does it make to the insurance company if he keeps this in this garage or if he kept it in his house? He's got a big property. Let's get to Judge Erickson's question. My question is a little bit afield from where we've been. I want to kind of turn a corner a bit before we run out of time. And that is like if you presume that the other buildings, other structures, claws does not cover property that is being used for business purposes. And whether you rent the business property or whether you're just using it for business purposes because you have your employees stay there. You have tools that belong to the business, stay there, whatever. If we buy all that, then I get to the point where I'm sitting here looking at, well, you've got an agent and you've described everything to that you wanted to buy. And I understand the duty of the agent to procure insurance and who they're the agent for and all that's out there. But I've understood in my own mind that there's an obligation not to sell ethereal or illusory coverage. And at the end of the day, what would this ever cover on this particular outbuilding, right? I mean, if the agent knows what this building is and what it's being used for, when would it ever cover? And if so, isn't that part of your second claim that there was a breach of the duty to acquire appropriate coverage? Yes, absolutely. The question that you're asking is, I guess, one that I think Mr. Berglund should have to answer as well. Well, don't worry. I'll ask him too if he doesn't volunteer to answer. The issue is that Safeco has taken the position, not that some obscure type of liability or loss is not covered. They've taken the position that the other structure is not covered for anything and never was. And not only that, they renewed this policy. And when it was renewed, they took the money and they continued to take the position, although there hasn't been another claim filed, that this building is not covered and never was. And so that puts them in sort of a peculiar position. Most of the cases that you see, particularly on liability, involve something sort of obscure that the parties could have never contemplated. This is a case where there's an allegation of no coverage whatsoever. So that has two things. First of all, Minnesota has the reasonable expectations doctrine, which is, when you buy something, you think that you're going to be covered for it. And the counter-argument was, well, you have a duty to know what you're buying. Well, there's really no way to find that my clients believed that they weren't covered. Because they had every kind of insurance you could imagine. The business has every kind of insurance it can imagine. It's got workers' comp, commercial general liability. They've got boats. They've got RVs. They have a lot of insurance. And then following on to that, as Judge Erickson, you pointed out, there is the clear Minnesota case law that says an agent is liable for failing to procure the correct insurance. And in this case, again, this isn't like an obscure liability. And similarly, the insurance company is bound by the actions of its agent. And that is, bound by the actions of its agent is both as a matter of law and as a matter of fact. There is a Minnesota statute, actually two Minnesota statutes, that make it clear that an agent, anybody who is licensed is the agent, anyone who is licensed in the insurance business is the agent of the insurance company. But as a matter of fact, this policy was bound by the agent. So the ability to bind is kind of a central premise of principle and agency. And so, one way or the other, the Mobigs purchased insurance, paid for insurance, had a loss unrelated to any business use of the property. The loss actually had nothing to do with this garage structure, which is where these various tools are located. And furthermore, we put in the record with some great detail, what all that stuff in those photos were. Mr. Gus, you're well into your rebuttal. You may use your time, but you may want to... I appreciate that, Your Honor. I guess I will stop now and save a minute. Thank you. Very well. Mr. Bergman. Excuse me a moment while I get my mouse away from my mic unmuting here. Your Honors, may it please the Court. My name is Daniel Bergman, and I'm here today on behalf of the Apelli Safeco Insurance Company of Illinois. Now, Your Honor, Mr. Gus has thrown a great deal at you today and has allotted time to answer your questions. But I think a lot of the response to what he's argued is pretty well already addressed in the briefing. What I'd like to focus on instead are the two issues that led to the summary judgment ruling from the District Court. The first is what's not disputed from the underlying record and why that alone is sufficient for summary judgment. And the second is why the plain language of this homeowner's policy when applying those undisputed facts does not provide coverage for this loss. Now, first off, there is no dispute whatsoever that Wobig Construction's registered business address is 19229 County Road 10, and that's the same address as Joseph and Carrie Wobig's home. This has been the case since 2014, the year that Mr. Wobig constructed the pole barn. That has to be make weight because that's true of so many small businesses in America for so many purposes. Proceed. Absolutely. But at that time, Your Honor, that is true, but at that time in 2014, he closed up a shop that he had for Wobig Construction in downtown Zambroda and he started listing that County Road 10 address as his business address for tax purposes, employment records, and for all company vehicle registrations. And also at that time, Mr. Wobig apparently had specific discussions with his accountant as how he intended to use that structure. And based on those discussions, the accountant split that building up for tax purposes and allocated some of the square footage to Mr. Wobig's business and some to his residence. And if you look at the underlying record, you can see in their opening summary judgment brief that they took the deduction for the purpose, and this is the intended use, that's what it says in paragraph 9 of their opening statement of facts in document number 42 of the underlying record, they said that they intended to use it for the storage of business equipment. Now, in the subsequent years, Your Honors, very little changed with respect to the operation of Mr. Wobig's business. It remained registered at that address. Mr. Wobig continued to declare that the structure was used in part for business. Mr. Wobig still stored the business property and other property that he used for his business in that structure. And that admission is also made in that same summary judgment brief in paragraph 4 of the statement of facts. Now, the only thing that did change after 2014 was that Mr. Wobig built a new home on the same property in 2017. And then that pole barn shifted from being a primary residence to a secondary structure, and under the policy, that means that the coverage shifted from coverage A to coverage B, and that's more limited coverage. Now, these facts, which are all undisputed, are the material facts for the purposes of the insurance coverage that's at issue in this dispute. At the time that Mr. Wobig applied for this insurance in 2017, he was operating his business from the property, using his home as a showroom for prospective customers, and was claiming the other structure as a business-related storage facility for tax purposes. But he claimed on his application that there was no business on the property, and he got a homeowner's policy without an endorsement for business use for the other structure. And Judge Erickson, you asked the question about agency here, but let me just make clear here that there is nothing in the record that the agent was actually advised other than Mr. Wobig's declaration after the fact, and they never identified this agent as a person that had discoverable facts. He was never deposed. And so I take issue, and the Bozic case, I know that this is briefed very this gentleman was not an agent for Safeco under Minnesota law. So he claimed on his application that there was no business on the property, so he got a homeowner's policy without an endorsement for business use for the other structure. And contrary to what Mr. Guest says, this is actually a fairly simple endorsement to get if Mr. Wobig had disclosed how he was using the property at that time. And you can see a sample version of that endorsement in Safeco's appendix at page 412. It simply eliminates that business use language from the other structure. Mr. Berkman, is there another location for Wobig construction? My understanding, given the deposition testimony, is that he has various properties that he uses for temporary storage. I'm not sure if that's currently the case or not. It's kind of a moving target. He has a building for storage for a while, shuts it down. He had a farmhouse that eventually he created a housing community in that farm area. But the only constant is that 19229 County Road 10. So for all the years, that's the only place that was constant. Didn't he say that at job sites he had an office? Well, he didn't say he had an office. He said that that was where he conducted his business. Oh, okay. Proceed. So let's assume for a second, and if there's more, I'm sure you'll tell me. But let's assume that all he is doing is, as Judge Benton said, for convenience sake, placing some of the construction tools in that other structure. And the policy itself will cover up to $3,000 of business property that happens to be in that structure. So it seems to me that at least a decent argument can be made that the policy doesn't contemplate a business use as merely being a storage of some incidental tools. I do respectfully disagree with that, Your Honor, and here is the reason. Because the business property is specifically excluded if it is stored on the property. The storage of business equipment is an express exclusion. So what that contemplates, the business property contemplates, is occasions where let's say you take a business laptop home, your house catches on fire, and you would have that business property covered under your homeowner's policy. It does not contemplate the storage of business equipment because if you look specifically at the exclusions for personal property, business property that is stored on the premises is excluded. So what's the difference between stored and happen to be there? You know, if you bring the laptop, if the laptop is permanently at home, is it stored there? Well, again, this gets to a distinction within the policy itself as well. Because if you just bring it home and you have it in your home, then it doesn't matter whether it's stored or not. What matters is when it's in the other structure. Because the other structure has the specific exclusionary language. So if you had a home office in your home and you had a fire, that would be covered. But under coverage B, which is a separate coverage, if you decided to create a home office in your other structure, then it would not be covered. Does that make sense? But if I brought my laptop home for one day and it was in the other structure, it would be covered. That's correct. But if my laptop lived there, even though it was for business use, it would not be covered. Correct. And also, all of these nail guns, these shovels, these bags of mortar, these were all stored. And I, again, point your attention to that document number two, where he acknowledges that a variety of tools and equipment are stored in the other structure. And they are used for business purposes. Also in that paragraph four, because he acknowledges that Wobbe Construction uses them. So, let me just kind of wrap up this factual portion of it, just by saying that the district court, instead of taking this lawyer spin that both lawyers have been making to it, he looked specifically at the record itself. And he cited to the specific allegations that the plaintiff made with respect to how the property was being used. And he determined that that other structure was used in whole or in part for business, based upon the language of the policy. Now, I do want to address one of these policy arguments that Mr. Gust has made here today and in his briefing. And first off, as you know, the court needs to review the specific policy language on a case-by-case basis and determine whether the coverage exists based upon that policy language. So, these cases that have different terminology, such as those that use the term business purpose, or don't define business, or don't define purpose, those cases only have limited relevance here, because that's not what this policy says. The language here excludes coverage for another structure if the building is used in whole or in part for business. And business is specifically defined, and more broadly defined as normal, as a trade, profession, or occupation engaged in on a full-time, part-time, or occasional basis. That means that if the building is used in any way for that full-time, part-time, or occasional trade, profession, or occupation, even if that use is only partial, there's no coverage. So, the district court correctly came to this conclusion, and when it implied those undisputed facts we were just discussing, held that there couldn't be coverage under any rational reading of the policy. And it noted that this exclusionary language is broader than other language cited in the case law, because the building's primary purpose does not need to be business-related. And that's the distinction here, Your Honors. Mr. Gust's arguments suggest that Safeco had to find that Mr. Wobig was actually operating a business from the building, but that's not what the policy says. He simply has to use the building in some way for his trade, profession, or occupation. So, storing tools, equipment, and signage used for his business is using the building, at least in part, for business. So, there's no ambiguity here, Your Honor, and therefore the reasonable expectations doctrine doesn't apply. And looking at the coverages in the other sections of the policy doesn't really create that ambiguity either. Now, Mr. Gust has cited the policy's inclusion of limited coverage for business personal property as evidence of some intent to cover buildings used in part for business, but that's not the case. In fact, the coverage excludes stored business property, which is consistent with the rest of the policy. And I know counsel has argued that there should be some difference between storing equipment and the storage of equipment, and maybe that's an argument that I'm not properly wrapping my head around here, but at the end of the day, it's that document 42, and if we look at that again, you look at paragraph 9 of that document, that statement of facts, he says that the intent of the building was for the storage of business equipment. So, in the underlying briefing, the Wobigs acknowledged that they were using the building for business, and in that same document in paragraph 4, admit that at the time of the loss, they were still storing business property there, and employees were using the tools stored in it. So, at the end of the day, your honors, rather than going down all these rabbit holes that the Wobigs try to have us go down here, I think we need to circle back to two key questions. The first, does this homeowner's policy, which has more limited coverage for business, does this homeowner's policy provide coverage for a secondary structure if it's being used for business in any way? And second, does the underlying record demonstrate that the secondary structure was being used at least in part for business? If the answer to these two questions is yes, then there's no coverage, and given the record here, your honors, I submit that the answer is yes. So, unless the panel has any additional questions, I'll cede the rest of my time. Seeing none, we'll hear rebuttal from Mr. Gust. Mr. Gust, you're muted, please. Mr. Gust, you need to unmute your mic. I don't remember muting it, but maybe someone did it for me. All right, I apologize. Quickly, Judge Benton, you scared me a little bit with the Smith case because I thought if I missed something, but in fact, I did address that on page 19 and 20 of the reply brief, and so my position remains, they rented the building. What the Smith case stood for was it doesn't matter that the loss was unrelated to the business use, and I haven't disputed that. I don't think it's a great ruling, but I haven't disputed that. Counsel brought up the issue of the fact that when this building was built, they thought it was going to be tax deductible. That was what it was at one time, and that changed, and in order for that argument to bear any weight, you have to think that the accountant was lying when the accountant said, no, that was my mistake, I just didn't know. And finally, the idea that property stored in storage in this building is not covered may be true, but that doesn't void coverage for the building itself. There's nothing that voids coverage if it's stored or in storage. And furthermore, I don't think that a laptop that happens, you happen to be using your laptop in the structure, that that constitutes that it's stored or in storage, it's being used. And so I, like one of the early people said, I should have reserved 20 minutes, but I'm happy to answer any questions, otherwise I guess I have to stop because I'm out of time. Very well. Seeing none, I think that's correct. Counsel, we appreciate your briefing and appearance before us today. The case is submitted and will be decided in due course. Thank you. Thank you, Your Honor. May be dismissed. Ms. Rudolph, does that complete our docket for the day? Yes, it does, Your Honor.